**SO ORDERED: August 26, 2011.**



**Basil H. Lorch III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| ROBERT CHARLES KLIPSCH, | ) | CASE NO. 09-71922-BHL-7 |
|     Debtor. | ) | |
| _____ | ) | |
| GERMAN AMERICAN BANCORP, | ) | |
| f/k/a CITIZENS STATE BANK, | ) | |
|     Plaintiff, | ) | |
| vs. | ) | ADVERSARY NO. 10-57010 |
| | ) | |
| ROBERT CHARLES KLIPSCH, | ) | |
|     Defendant. | ) | |
| _____ | ) | |

**JUDGMENT**

    This adversary proceeding was commenced on March 30, 2010, and came before the Court on June 23, 2011, for trial on the Plaintiff's **Amended Complaint** which was filed on February 16, 2011. Pursuant to the Court's direction, the parties filed Post-Trial Briefs on July 19, 2011. The Court, having considered the foregoing pleadings, and the testimony and evidence presented at trial, now makes the following Findings of Fact and Conclusions of Law:

Findings of Fact

1. In or about 2004, Robert Charles Klipsch ["Klipsch"] was the president of Klipsch Motors, Inc. ["Klipsch Motors"], a General Motors car dealership in Petersburg, Indiana.

2. In 2004, Klipsch Motors entered into a floor plan arrangement with German American Bancorp f/k/a Citizens State Bank ["the Bank"] for Klipsch Motors' used car inventory.

3. During the relevant time period herein, Klipsch was also a member of the Bank's board of directors.

4. On April 28, 2004, Klipsch, acting on behalf of the corporation, executed agreements and delivered them to the Bank. Those instruments consisted of a promissory note in the amount of One Million Dollars, a line of credit agreement, and a Commercial Security Agreement.

5. Under the floor plan arrangement, Klipsch would periodically sign a form entitled "Floor Plan Disbursement and Inventory Control Form" and personally deliver it to the Bank. The form listed specific vehicles, represented as eligible for used car floor plan financing under the agreements with the Bank, along with a specific dollar amount requested.

6. Klipsch Motors also had a floor plan arrangement with GMAC which covered new vehicles.

7. Although the floor plan arrangement with the Bank was specifically limited to used vehicles, at some point, Klipsch Motors, by and through Klipsch, began listing new

8. vehicles on the Floor Plan Disbursement and Inventory Control Form, whereby the Bank advanced funds on vehicles that were not eligible for financing under the terms of their agreement.

8. In August, 2007, the Bank became suspicious of the amount of the floor plan financing requested and, upon investigation, determined that there were a number of vehicles listed in the Klipsch Motors inventory that were subject to the GMAC floor plan lien at the time Klipsch Motors obtained funds from the Bank on the same vehicles.

9. Mark Schroeder, the president of the Bank, met with Klipsch who acknowledged that Klipsch Motors had, in fact, been double floor planning vehicles. It was agreed at that time that the amount advanced by the Bank to Klipsch Motors, based upon the false documentation provided the Bank, was $812,545.00.

10. The parties agreed that Klipsch would personally execute a new note and deposit the proceeds into the account of Klipsch Motors. Klipsch Motors would then pay for all of the cars which were not in its inventory and for which the Bank had not received payment.

11. On September 20, 2007, Klipsch signed a personal note to the Bank for $815,000.00, which was secured by intangibles owned by him, his wife and his parents, valued at approximately $700,000. His father, Morris Klipsch, also signed a limited personal guaranty of the $815,000 note.

12. Payments of the interest due on the $815,000 note were made until September 30, 2008, at which time an out of trust situation arose between Klipsch Motors and

        GMAC and Klipsch Motors closed.

13. The Bank liquidated the collateral for the $815,000 note and the deficiency, as of September 25, 2009, was $267,950.95.

14. On October 19, 2009, Klipsch filed a personal Chapter 7 bankruptcy petition and scheduled this debt for discharge.

## Discussion

The Bank argues that the Debtor's obligation on the September 20, 2007 promissory note from Klipsch to the Bank is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2) and (4). The Debtor, however, asserts that any alleged fraud that may have occurred was in connection with the 2004 agreement and that the 2007 promissory note represents a good faith settlement of the underlying debt of Klipsch Motors. Because the 2007 note was in full satisfaction of the monies due to the Bank for any alleged fraudulent misrepresentation, the Debtor argues that there was a novation whereby the old debt of Klipsch Motors was extinguished and replaced with a new obligation secured by Klipsch, his wife, and his parents. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

So how much of a fresh start may a debtor legitimately expect? This case illustrates the tension between the common law concept of novation and the statutory prohibition against discharging debts for money obtained by fraud. The Supreme Court considered a similar question in *Archer v. Warner*, 538 U.S. 314, 123 S.Ct. 1462 (2003), and concluded that the bankruptcy court's interest in ensuring that "'all debts arising out of' fraud are excepted from discharge survives the concept of novation.

In that case, the Archers sued the Warners for fraud in relation to the sale of a manufacturing

4

company. The lawsuit was subsequently settled and the Warners obtained a general release in exchange for a settlement amount of $300,000. The Warners paid the Archers $200,000 and signed a promissory note for the remaining $100,000. After no payments were made on the note, the Archers sued the Warners on the note. At that point, the Warners filed for bankruptcy protection and the Archers asserted that the debt was excepted from discharge under 523(a)(2)(A). The bankruptcy court ruled that the settled debt was dischargeable and the Fourth Circuit affirmed.

The Supreme Court agreed that the settlement agreement left "only one relevant debt" but it left open the possibility that such debt may itself arise out of the underlying fraud, stating that: "[A] debt embodied in the settlement of a fraud case 'arises' no less 'out of' the underlying fraud than a debt embodied in the stipulation and consent decree."[1] *Id.* at 321. Because the settlement and release worked "a kind of novation," the matter was remanded for an inquiry on whether the settlement debt itself arose out of false pretenses, a false representation, or actual fraud. *Id.* at 323.

In *In re Cozart*, 2009 WL 1955294 (Bankr.W.D. Ark.), the debtor had entered into a Settlement Agreement with the plaintiff. That court noted that "[t]he one fact that is present in *Archer* and *Brown*, but not in the case before this Court, is the existence of an underlying debt resulting from, initially, a lawsuit that was resolved through stipulation or settlement agreement." *Id.* at *5. Because the debt against the debtor first arose in the settlement agreement, the court found that it couldn't "look beyond the settlement agreement [as] there was no debt owed by Cozart prior to his entering into the settlement agreement." *Id.*

---

[1] The Court, in so holding, relied upon the precedent established in *Brown v. Felson*, 442 U.S. 127, 99 S.Ct. 2205, 60 l.Ed.2d 767 (1979), wherein it had held that the bankruptcy court could look behind a consent decree and stipulation to find a debt nondischargeable as based in fraud.

Likewise, the only relevant debt in this case is the 2007 promissory note which was executed in full satisfaction of the pre-existing note. It is significant to note that the pre-existing debt was between Klipsch Motors and the Bank, not the Debtor. When the Bank discovered that Klipsch Motors had been double floor planning vehicles, Klipsch acknowledged the fact and made a legitimate effort to make the Bank whole. That effort included assuming personal responsibility for the company's debt, giving the Bank all new collateral, as well as his father's personal guaranty on the debt. Klipsch also borrowed money from his home equity line and made payments toward the debt for over a year before his business failed and he filed bankruptcy the following year.

## Conclusions of Law

The Court finds that there was no fraud established in the making or subsequent breach of the 2007 note. Section 523(a)(2)(A) requires, *inter alia*, that the debtor make a representation that he knows to be false with the intention that the creditor rely on such misrepresentation. This is not a case where a debtor settles a lawsuit for a sum of money and promptly files bankruptcy to avoid repayment of a settlement amount. There was no evidence that Klipsch had any intention or expectation of breaching the 2007 agreement. In fact, Klipsch garnered as much security as he could to pledge as collateral for the note. Based upon the facts and circumstances of this case, the Court does not find that Klipsch make any false representations in relation to the 2007 note.

The Bank also asserts that the debt should be excepted from discharge under section 523(a)(4) based upon Klipsch's position as a member of the Bank's board of directors. Again, as it relates to the 2007 note, the Court finds no breach of fiduciary duty. Klipsch assumed personal responsibility for an underlying company debt, obtained new collateral valued at approximately $700,000, accompanied by a personal guaranty from Klipsch's father. The Court finds that the 2007

6

note was bargained for, and executed, in good faith.

It is this Court's opinion that Klipsch had the intention of honoring his obligations under the note but, when the bottom fell out of his business, he was forced to file bankruptcy to deal with his other debts. The collateral proved insufficient to satisfy the note because of the poor market position at the time of the default. The deficiency, therefore, is a result of unfortunate timing rather than Klipsch's bad faith refusal to honor his obligations. For all of the foregoing reasons, the Court denies the Plaintiff's Amended Complaint and finds that the subject debt is not excepted from discharge. Judgment is entered in favor of the Defendant.

**IT IS SO ORDERED AND ADJUDGED.**

###